IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ALONZO E. BANKS, SR.,**            Case No. 1:15 CV 765

    Plaintiff,                               Judge James Gwin

    v.                                       Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.                        REPORT AND RECOMENDATION

### INTRODUCTION

Plaintiff Alonzo E. Banks, Sr. ("Plaintiff") filed a complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. § 1383(c). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1). (Non-document entry dated April 20, 2015). Following review, the undersigned recommends the Commissioner's decision be remanded under sentence four of 42 U.S.C. § 405(g).

### PROCEDURAL BACKGROUND

Plaintiff filed an application for DIB and SSI on April 12, 2012, alleging disability as of November 29, 2011, due to sleep apnea and headaches. (Tr. 151-62, 187). The claim was denied initially and on reconsideration. (Tr. 107-20). Plaintiff, represented by counsel, and a vocational expert ("VE") testified at an administrative hearing on August 20, 2013. (Tr. 28-64). Following the hearing, an administrative law judge ("ALJ") issued an unfavorable decision finding Plaintiff not disabled. (Tr. 13-23). The Appeals Council denied Plaintiff's request for review, making the

hearing decision the final decision of the Commissioner. (Tr. 1-5). Plaintiff filed the instant action on April 20, 2015. (Doc. 1).

**FACTUAL BACKGROUND**

Personal Background and Testimony

Plaintiff was born on October 5, 1970, and has a 12th grade education with some additional college coursework. (Tr. 33, 183, 188). He served in the United States Marine Corps and had an "other than honorable" discharge. (Tr. 34). In a disability report, he stated he stopped working on November 29, 2011, because he was laid off from a seasonal job, but at the hearing he testified he last worked in April 2012. (Tr. 35, 187). He has past work experience as a maintenance worker, laborer, professional mover, and roofer. (Tr. 34-35, 188).

Relevant Medical Evidence[1]

*Evidence Before the ALJ*

On May 10, 2012, Plaintiff completed a function report; he was able to get his grandson ready for school, take care of pets, prepare all his own meals, clean, mow the lawn, repair his house, do laundry, drive a car, go out alone, shop, attend his son's and grandson's football games, spend time with others, fish, watch television, read, and play games. (Tr. 193, 198-99, 201, 205). However, in response to a question inquiring into activities Plaintiff could once do but no longer could, he responded "everything". (Tr. 198). He stated he could lift 50 to 100 pounds, but anything heavier would cause a headache. (Tr. 202).

In a clarifying call the following day, he stated he had not been to an emergency room or hospital in the previous two years and had not seen a doctor since 2011, and could not recall the last time he had been to a doctor. (Tr. 205). Headaches kept him from holding a job. *Id.*

---

1. Plaintiff challenges only the ALJ's determination with regard to his back pain; therefore, the undersigned focuses on evidence related to such. (Doc. 14, at 1, 2).

2

In January 2013, Plaintiff first reported pain in his back and he alleged the change occurred in September 2012. (Tr. 216).

Plaintiff had an appointment with certified nurse practitioner Virginia Brugger ("CNP Brugger") at Lorain County Health and Dentistry on January 14, 2013, where he complained of back pain. (Tr. 319-20). He reported his worsening back pain was a ten on a ten point scale and radiated to his ankles, calves, and thighs. (Tr. 317-18). He described the pain as achy, burning, deep, piercing, sharp, shooting, stabbing, and throbbing. (Tr. 318). His symptoms were aggravated by bending, changing positions, rolling over in bed, sitting, and walking. *Id.* He stated he felt "paralyzed by the pain" in his lower back. *Id.*

A thoracic spine x-ray dated January 17, 2013—ordered by CNP Brugger and read by Jefrey M. Ekstein, M.D.—revealed "mild to moderate multilevel degenerative changes and bridging osteophytes. There [was] no evidence of an acute fracture or spondylolisthesis." (Tr. 310). An x-ray of Plaintiff's lumbar spine, also ordered by CNP Brugger and read by Dr. Ekstein, was largely unremarkable and revealed "[n]o significant spondylolisthesis or spondylolysis." (Tr. 311).

On January 28, 2013, Plaintiff received medical care from CNP Brugger at Lorain County Health and Dentistry. (Tr. 304-309). He again complained of back pain. (Tr. 306-07).

On April 1, 2013, Plaintiff had an appointment with CNP Brugger. (Tr. 299-303). He reported back pain and was assessed with, among other things, a backache which was improved with pain medication. (Tr. 299-301). Plaintiff's lower back pain was stable, but persistent and radiated to his left and right thighs. (Tr. 299-300).

He had an appointment with CNP Brugger on May 1, 2013. (Tr. 293-98). She assessed Plaintiff with lumbar strain and noted "with bil[ateral] shooting radiculopathy. [questionable]

spinal stenosis." (Tr. 293). Plaintiff was referred for physical therapy and pain control; injections were also ordered. *Id.*

During a June 3, 2013, appointment at Lorain County Health and Dentistry, Plaintiff reported back pain and received a refill of his pain medication. (Tr. 285, 288). The record reveals he had missed his physical therapy appointment. (Tr. 285).

Opinion Evidence

On May 31, 2012, at the request of the Ohio Disability Determination Division, Dr. Khalid Darr conducted an internal medicine examination. (Tr. 230-37). During the exam, Plaintiff admitted to smoking one pack of cigarettes daily and smoking marijuana weekly. (Tr. 231). He stated he last worked in August 2011. (Tr. 231). The exam was unremarkable and Dr. Darr noted "claimant should have no limitation of carrying and lifting. The claimant's activities of daily living and instrumental activities of daily living are intact." (Tr. 233).[2]

In July 2012, Plaintiff complained of severe, periodic low back pain during an adult clinical interview performed at the request of the Division of Disability Determination. (Tr. 242).

State Agency Examiners[3]

In June 2012, state agency reviewing physician Diane Manos, M.D., reviewed Plaintiff's alleged impairments involving obstructive sleep apnea and headaches and determined he did not have a medically determinable impairment. (Tr. 74). On reconsideration, state agency reviewing physician Gerald Kylop, M.D., also found Plaintiff did not have a severe impairment. (Tr. 102-03, 113-15).

---

2. Plaintiff notes that because he did not allege back problems until January 2013, Dr. Darr did not consider this impairment in his opinion. (Doc. 14, at 2).
3. Plaintiff again notes the state agency reviewing doctors did not consider a back impairment in their assessments because Plaintiff did not allege back problems until January 2013. (Doc. 14, at 2).

Hearing Testimony

At the hearing, Plaintiff testified he was unable to work due to his post-traumatic stress disorder, arthritis in his lower back, and "military related diseases". (Tr. 35-36, 47). He was being treated for those conditions. *Id.* He had pain in his lower back that traveled throughout his body which he felt was a ten on a ten point scale. *Id.* Prior to receiving a prescription for pain medication, he suffered from "constant, excruciating, relentless pain". *Id.* With the pain medication he stated his pain was a six on a ten point scale. *Id.* As of the hearing date, he had not yet undergone physical therapy and did not require a back brace, cane, crutches, or TENS unit. (Tr. 37).

He stated he did not have a primary care doctor, but rather a certified nurse practitioner, who diagnosed him with arthritis in his lower back. *Id.* He estimated he could walk and stand for about fifteen to twenty minutes at a time. (Tr. 38). He could pick up a coffee cup or gallon of milk, but could not estimate how much he could lift, and could only sit for a short period of time due to pain. (Tr. 38-39). He stated he was living in an apartment by himself and received assistance from the state. (Tr. 40-41). He could drive, cook, dust, sweep, vacuum, shower, shave, wash his hair, and get dressed by himself. (Tr. 33, 41-42). However, he stated he was unable to engage in physical activities as he once did due to back pain. (Tr. 42-43). He needed assistance from a friend with shopping and doing the laundry. (Tr. 42).

He also testified he was terminated from numerous jobs due to arguments with co-workers and supervisors. (Tr. 43-44). He stated he received financial assistance from the State of Ohio after it made a determination he was disabled following evaluations by Elizabeth Mease, M.D., and Marge Zerba, Ph.D. (Tr. 46). He stated he had not been around groups of people since he last worked in April 2012. (Tr. 47-48). He could walk from his apartment down the stairs, and

walk up or down the street, but then he would take pain medication and he would be "in for the rest of the day." (Tr. 49).

A VE also testified at the administrative hearing. (Tr. 58). He noted Plaintiff's past work experience ranged from unskilled to semi-skilled labor with exertional limitations of heavy to very heavy. (Tr. 58-59). He stated that a hypothetical 42-year-old individual with a twelfth grade education plus a few years of college, who could read and write, perform simple arithmetic, with a similar work background, and had the residual functional capacity to perform a full range of heavy work could perform all past work, except jobs with very heavy exertional requirements. (Tr. 59). The VE also noted the same hypothetical individual would be unable to perform any work if he had an additional limitation which would cause him to be off-task at least twenty percent of the time. (Tr. 59-60).

ALJ Decision

The ALJ issued an unfavorable of decision dated August 29, 2013, making the following findings of fact and conclusions of law:

1. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015.
2. Plaintiff had not engaged in substantial gainful activity since November 29, 2011, the alleged onset date.
3. Plaintiff had the following medically determinable impairments: personality disorder with narcissistic and dependent features, history of post-traumatic stress disorder, history of marijuana abuse, history of headaches, and history of obstructive sleep apnea.
4. Plaintiff did not have an impairment or combination of impairments that significantly limited (or was expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, Plaintiff did not have a severe impairment or combination of impairments.
5. Plaintiff had not been under a disability, as defined in the Social Security Act, from November 29, 2011, through the date of the decision.

(Tr. 18-23).

*Evidence Before the Appeals Council*

On February 10, 2014, Plaintiff submitted the opinions of consultative examiners Dr. Mease and Dr. Zerba to the Appeals Council, along with additional contentions. (Tr. 226-28). These opinions were not before the ALJ, although they were in existence three months prior to the administrative hearing. (Tr. 323-29). Plaintiff explains they were not obtained until after the ALJ decision, despite repeated requests. (Doc. 14, at 4).

Consultative Examiners

On May 6, 2013, Plaintiff underwent a consultative examination with Elizabeth Mease, M.D. (Tr. 323-29). Plaintiff alleged his disabling conditions included Gulf War syndrome, fibromyalgia, sleep apnea, and severe headaches. (Tr. 323). She opined Plaintiff could stand or walk for four hours in an eight-hour workday and one hour without interruption; lift or carry six to ten pounds frequently and twenty-one to twenty-five pounds occasionally; and had mild limitation in lumbar range of motion. (Tr. 326). She also noted he was "in no apparent distress", but "moaning with minor movements". (Tr. 329). A physical exam of the lumbar spine revealed flexion of 70 degrees, lateral flexion of 20 degrees, and negative straight leg raises bilaterally. *Id.* Plaintiff declined an attempt at extension. *Id.* Dr. Mease also noted the presence of "symptom magnification behavior". *Id.* She concluded Plaintiff was able to perform light physical demand activity. *Id.*

On May 11, 2013, during a psychological consultative examination with Margaret Zerba, Ph.D., Plaintiff stated his "nurse diagnosed arthritis in my back." (Tr. 331). He lived alone and managed his household himself, but stated "I try to walk, but am in too much pain to do any hobbies." (Tr. 332).

7

**STANDARD OF REVIEW**

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

**STANDARD FOR DISABILITY**

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which

        substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

As an initial matter, the Court is not permitted to reverse an ALJ decision based on evidence that was not before the ALJ. *Cotton v. Sullivan*, 2.F.3d 692, 695-96 (6th Cir. 1993). Plaintiff acknowledges this fact and argues the Court should instead consider this evidence—the opinions of Dr. Mease and Dr. Zerba—if the Court first finds legal error and then proceeds to a harmless error analysis. (Doc. 14, at 4-5). While the undersigned does find error for the reasons below, it is not harmless, so these opinions are not considered.

Step Two

Plaintiff asserts the ALJ erred in terminating the disability analysis at Step Two in regard to his back pain. He alleges the ALJ should have considered his back pain as a medically

determinable impairment because an x-ray, read by an acceptable medical source, revealed degenerative changes. (Doc. 14, at 7). The ALJ stated that Plaintiff's back pain was not a medically determinable impairment because his treating source, CNP Brugger, was not an acceptable medical source. (Tr. 21).

Step Two of the disability analysis asks, "Did claimant have a medically determinable impairment, or a combination of impairments, that is 'severe,' which is defined as one which substantially limits an individual's ability to perform basic work activities?" 20 C.F.R. § 404.1520. Pursuant to the agency's rules, only an "acceptable medical source", such as a medical doctor, can establish a medically determinable impairment. 20 C.F.R. § 404.1513(a). A certified nurse practitioner is not an acceptable medical source, but rather an "other source". 20 C.F.R. § 404.1513(d)(1). Social Security Ruling 96-4p emphasizes that "[n]o symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment." X-rays qualify as laboratory findings. 20 C.F.R. § 404.1528(c); *see also Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 498 n.1 (6th Cir. 2006). In the Sixth Circuit, "the step two severity regulation. . . has been construed as a *de minimis* hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1998).

Here, in regard to Plaintiff's alleged back pain the ALJ conducted the following analysis of treatment records from CNP Brugger:

> In terms of the claimant's pains, he saw Virginia Brugger, CNP, on January 14, 2013, complaining of hearing loss, back pain, fatigue, and visual loss. He rated his back pain as a "ten out of ten." An exam revealed impacted earwax and lumbar tenderness but no neurological deficits. An x-ray of lumbar spine showed well-preserved disk space and no acute fractures. An x-ray of thoracic spine showed mild to moderate multilevel degenerative changes and no acute fractures.

> Following up on January 28, Nurse Brugger noted that the claimant required a new CPAP mask from the VA. At that time, the claimant reported that he could not afford Vicodin and exercised regularly. On exam, he had appropriate mood and affect and intact memory, with no abnormal physical findings. She ordered an MRI. The claimant returned in April, and had not fulfilled any of the ordered tests, including the MRI. Nurse Brugger noted no changes in the exam. On May 1, 2013, the claimant returned, and Nurse Brugger noted lumbar tenderness. She referred him to PT for his back pain. The claimant missed that appointment. The claimant's back pain is not medically determined [sic], because Nurse Brugger is not an acceptable medical source. His back pain cannot be included in this finding, and none of her treatment notes show any evidence that either headaches or sleep apnea limit the claimant.

(Tr. 21) (internal citations omitted).

The ALJ concluded that Plaintiff did not have a physical impairment or combination of physical impairments that significantly limited his ability to perform basic work activities, which he stated was supported "by the opinions of every acceptable medical source in the record, and the benign findings on physical and mental exams." (Tr. 22).

Here, the thoracic spine x-ray, which was read and released by an acceptable medical source—medical doctor Jefrey M. Ekstein, M.D.—satisfies the Step Two requirement. The ALJ was required to at least consider this evidence because it was produced by an acceptable medical source. The fact that the x-ray was ordered by a nurse practitioner, does not negate the fact that a medical doctor read the x-ray and noted it showed "mild to moderate multilevel degenerative changes". The ALJ erred by not considering this evidence. Even though Plaintiff did not initially apply for benefits due to back pain, he did begin reporting the pain in January in 2013, and thus the ALJ was required to consider evidence of back pain, including the x-ray.

The Commissioner offers evidence showing Plaintiff's improved condition with "minimal treatment" and his non-compliance with treatment recommendations. (Doc. 16, at 7). However, even if substantial evidence ultimately supports the ALJ's determination that Plaintiff

11

is not disabled, the ALJ still erred because he did not apply the correct legal standard. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 410 (6th Cir. 2009) (remanding because the ALJ failed to follow the agency's own regulations in reaching her disability determination). He failed to find that a laboratory finding from an acceptable medical source satisfied Step Two of the disability analysis.

The Commissioner also argues there is no evidence Plaintiff had any functional limitations; however, this is a determination for the ALJ at Step Four of the analysis and not for this Court. The undersigned recommends a sentence four remand so that the ALJ can properly consider any evidence of Plaintiff's back pain.

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the undersigned recommends the matter be remanded pursuant to sentence four for further proceedings consistent with this recommendation.

       s/James R. Knepp, II
       United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).